# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHRISTOPHER E. THOMPSON,

    **Plaintiff,**

v.

OLUWATOSIN ORUNSOLU, et al.,

    **Defendants.**

Case No. 5:17-cv-03203-HLT-KGG

## MEMORANDUM AND ORDER

Plaintiff Christopher Thompson brings this action pursuant to 42 U.S.C. § 1983, asserting claims for violation of his rights under the Eighth and Fourteenth Amendments. Doc. 1. Defendants Oluwatosin Orunsolu, Maria Bos, Tim Smith,[1] Dan Schnurr, and Joe Norwood have moved to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment under Rule 56. Docs. 21-22. For the following reasons, the Court construes Defendants' motion as one for summary judgment and finds that it should be granted on the basis of qualified immunity.

## I.    BACKGROUND

Plaintiff Christopher Thompson is an inmate in the custody of the Kansas Department of Corrections ("KDOC"), residing at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. Doc. 1 at 1. Proceeding pro se,[2] Plaintiff filed this action on November 20, 2017, against various correctional officers and officials, alleging violations of his constitutional rights. *Id.* The

---

[1] Plaintiff does not identify Smith's first name in his complaint, referring to him only as "(FNU) Smith." Doc. 1 at 3. However, submissions by the KDOC and Defendants identify Smith as Tim Smith, Corrections Manager II (Major) at EDCF. Docs. 10, 21-22.

[2] Because Plaintiff proceeds pro se, his pleadings are construed liberally. *Ivory v. Platt*, 2016 WL 5916647, at *6 (D. Kan. 2016). However, Plaintiff is not relieved of his burden of alleging sufficient facts upon which a recognized legal claim could be based. *Id.*

Court previously ordered the KDOC to prepare a report—in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978)—that would provide the results of the KDOC's investigation into Plaintiff's allegations and offer any supporting affidavits, applicable rules and regulations, medical records, tapes of the incident, and other materials.[3] Doc. 4. The KDOC submitted its Martinez report on June 14, 2018.[4] Doc. 10. The following facts are taken from the record—including the complaint, the Martinez report, and properly submitted affidavits and exhibits—and are either uncontroverted or construed in the light most favorable to Plaintiff as the nonmoving party.[5]

**A. July 2017 Use of Force**

Plaintiff's claims center on a July 2017 incident involving Plaintiff, his cellmate, and Defendant Oluwatosin Orunsolu, a Corrections Supervisor I (CSI) at EDCF, during which Orunsolu deployed a chemical agent into Plaintiff's cell. On July 2, 2017, Orunsolu and Samantha Higbee, a Corrections Officer I (COI) at EDCF, were distributing meal trays to the inmates in Plaintiff's housing unit. Doc. 10 ¶ 8. When Orunsolu and Higbee approached Plaintiff's cell, both Plaintiff and his cellmate, Terry Fine, were standing at the door. *Id.* The parties disagree regarding what transpired next. Both Orunsolu and Higbee testified that Fine reached through the food

---

[3] When the plaintiff is a prisoner proceeding pro se, the court may order prison officials to investigate the plaintiff's allegations and prepare a report (referred to as a "Martinez report") detailing the results of that investigation. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). The purpose of a Martinez report is to "ensur[e] a factually sufficient record in cases involving pro se prisoner plaintiffs." *Stewart v. Norwood*, 2017 WL 4284971, at *2 n.25 (D. Kan. 2017).

[4] The Court subsequently granted the KDOC leave to amend its Martinez report to correct an error in the exhibits to the report. Doc. 15. The KDOC filed the amended exhibits on July 11, 2018. Doc. 16.

[5] For the reasons set forth in Part II, *infra*, the Court considers Defendants' alternative motion for summary judgment. On summary judgment, the Martinez report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall*, 935 F.2d at 1111. The Martinez report is part of the summary judgment record and, absent valid challenge, may be treated as providing uncontroverted facts. *Hartz v. Sale*, 687 F. App'x 783, 785 (10th Cir. 2017). To the extent Plaintiff has not come forward with any evidence to contradict the content of the KDOC's Martinez report, therefore, the Court treats those findings as uncontroverted facts. *Id.*; *cf. Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (finding that a court cannot accept the factual findings of a Martinez report where the prisoner presents conflicting evidence).

passage slot, grabbing Orunsolu. Doc. 16 at 1, 3. After Plaintiff and Fine resisted Orunsolu's orders to step back, Orunsolu withdrew his mace from his belt. *Id.* While Plaintiff moved toward the back of the cell, Orunsolu deployed a two to three second burst of mace into the cell, striking Fine in his midsection. *Id.* at 1, 3-4. Meanwhile, Plaintiff claims he never saw Fine reach through the food pass. Doc. 12 ¶ 8. Plaintiff claims he received his meal from Orunsolu and Higbee and was eating on his top bunk when he heard Fine cry out. Doc. 34 at 3. Plaintiff alleges the commotion caused him to "look up," at which point Orunsolu sprayed mace through the food pass. *Id.* Plaintiff claims the spray blinded him, causing him to fall out of his bunk and injure his lower back. *Id.* at 4.

In sum, the parties agree that Orunsolu deployed mace through the food pass into Plaintiff's cell. The parties agree that Plaintiff was not standing at the door when the chemicals were deployed. The parties disagree on Plaintiff's exact location at the moment the mace was deployed, with Plaintiff asserting he was on the top bunk (and subsequently fell) and Orunsolu and Higbee testifying that Plaintiff moved to the back of the cell after Orunsolu reached for his mace canister. Following the incident, a response team removed Plaintiff and Fine from their cell and took them to the showers for decontamination. Doc. 10 ¶¶ 10-11.

**B. Plaintiff's Alleged Injury**

Medical staff subsequently checked Plaintiff and Fine. *Id.* at ¶ 11. The Use of Force Report generated in connection with the July 2, 2017 incident does not indicate Plaintiff sustained any injuries. Doc. 10-3 at 2. Likewise, the officers involved in the incident—Orunsolu and Higbee—testified that Plaintiff did not complain of any injury or appear to be in distress. Doc. 16 at 2, 4. Plaintiff first reported an alleged injury stemming from the incident on July 20, 2017, when he submitted a Health Services Request Form for lower back pain and trouble breathing. Doc. 14-2

at 14.[6] In the form, Plaintiff claims he "got maced and feel [sic] off the top bunk," injuring his back. *Id.* According to the form, a medical appointment was scheduled for the following day; however, despite his request, Plaintiff refused to go to the appointment when called. *Id.*

Plaintiff did not make any further medical requests related to his alleged back pain until early September 2017 (over two months after the incident with Orunsolu). Doc. 14-1 at 101-04; Doc. 14-2 at 11.[7] Medical records from Plaintiff's September 8, 2017 exam indicate Plaintiff denied any gait dysfunction or radiation of pain to his lower extremities. Doc. 14-1 at 101. Plaintiff returned to the clinic on October 2, 2017, again complaining of lower back pain stemming from an incident "[a]pproximately one month ago" when Plaintiff "was maced by" a correctional officer (presumably a reference to the July 2, 2017 incident). *Id.* at 82. The notes from this visit indicate Plaintiff was able to walk into the office and get on and off the exam table without assistance, and that—although he had "mild tenderness" in his lower back—his range of motion was within normal limits. *Id.* at 82-84.

Over the next several months, Plaintiff returned to the clinic multiple times for alleged back pain. Doc. 10 ¶ 18. On August 21, 2017, Plaintiff filed a claim for property damage/loss or personal injury, again claiming Orunsolu maced him, causing him to fall off his bunk and sustain a lower back injury. Doc. 10-4 at 1. The Secretary of Corrections disapproved Plaintiff's claim. *Id.* at 2.

**C. Placement in Segregation**

In connection with the July 2, 2017 incident, both Plaintiff and Fine received Disciplinary Reports charging them with Class I Battery and were placed in segregation. Doc. 1-2 at 1-2; Doc.

---

[6] The Court notes that Plaintiff reported at least two health issues after the July 2, 2017 incident but <u>before</u> his July 20, 2017 health services request. Those reports—dated July 6, 2017 and July 13, 2017—make no mention of lower back pain. Doc. 14-1 at 157-58; Doc. 14-2 at 15.

[7] Between his July 20, 2017 health services request and the September 7, 2017 request, Plaintiff made at least two additional health services requests (on August 10, 2017 and August 14, 2017), neither of which referenced lower back pain. Doc. 14-2 at 12-13.

10 ¶ 12; Doc. 10-2 at 1, 11. Defendants Tim Smith, Corrections Manager II (Major), and Maria Bos, Corrections Manager II in charge of Classification, approved the placement. Doc. 1-2 at 2. The KDOC held a hearing on Plaintiff's charge on July 10, 2017, and, following the hearing, dismissed the charge for lack of evidence. Doc. 10-2 at 7-10. But the KDOC found Fine guilty of battery for grabbing the officers through the food pass. *Id.* at 13-20.

Following the dismissal of his charge, Plaintiff submitted grievances to various departments and prison officials regarding his continued placement in segregation. Doc. 1-2 at 7, 9, 14-15, 21-22, 24-25. However, Plaintiff remained in segregation. Records indicate Plaintiff remained in segregation due to misconduct and behavioral concerns. *Id.* at 13 (recommending that Plaintiff be sent "to HCF for long term restricted housing placement" based on behavior, disciplinary history, and safety concerns); Doc. 10-1 (reciting Plaintiff's criminal and disciplinary history). Plaintiff filed this action on November 20, 2017, alleging violations of his Eighth and Fourteenth Amendment rights. Doc. 1.

## II.  ANALYSIS

Plaintiff brings two claims against Defendants—in their individual capacities—pursuant to § 1983: Count I (against Orunsolu) based on an Eighth Amendment violation for excessive force; and Count II (against all other defendants) based on a Fourteenth Amendment violation of Plaintiff's due process rights. *Id.* at 4.[8] In his complaint, Plaintiff alleges Orunsolu violated his Eighth Amendment rights by spraying him with mace—causing him to fall off his bunk and injure his lower back—and then falsifying a disciplinary report about the incident. *Id.* at 4, 7-8. Plaintiff

---

[8] In his opposition, Plaintiff states that the various internal grievances he filed with prison officials asserted Fourth, Eighth, and Fourteenth Amendment violations. Doc. 34 at 7, 9. However, Plaintiff's complaint does not allege a Fourth Amendment violation and, indeed, these passing references in his opposition represent the first time Plaintiff has alluded to a Fourth Amendment violation in this case. Plaintiff has not asserted any facts or allegations regarding an unlawful search or seizure. The Court therefore finds that Plaintiff has neither pleaded nor supported a Fourth Amendment violation in this case.

alleges the other defendants—Bos, Smith, Dan Schnurr (acting Warden at EDCF at the time of the alleged events), and Joe Norwood (Secretary of Corrections for the State of Kansas)—violated his Fourteenth Amendment rights by relying on Orunsolu's allegedly false incident report to justify leaving him in segregation. *Id.* at 4, 8-9. Defendants move to dismiss, or, in the alternative, for summary judgment, arguing that: (1) Plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment excessive force claim as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and is therefore barred from pursuing relief under § 1983 for that claim; and (2) qualified immunity shields them from Plaintiff's claims.[9] Doc. 22.

The Court first considers qualified immunity.[10] For their qualified-immunity argument, Defendants rely on facts from, and materials attached to, the Martinez report submitted by the KDOC. A Martinez report may not be used at the motion to dismiss stage to resolve factual disputes. *Smith v. Trapp*, 2018 WL 587230, at *1 (D. Kan. 2018) (citing *McAdams v. Wyo. Dept. of Corr.*, 561 F. App'x 718, 720 (10th Cir. 2014)). In reviewing a motion to dismiss, if the court considers materials that were not attached to the complaint or incorporated into the complaint by reference—including documents attached to a Martinez report—it generally must convert the motion to one for summary judgment. *Id.* (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997); *Ketchum v. Cruz*, 961 F.2d 916, 919 (10th Cir.

---

[9] Plaintiff argues that Defendants failed to timely respond to his complaint and has moved for default judgment and contempt of court. Doc. 26. However, the Court entered an order extending Defendants' deadline for response to the complaint to September 6, 2018. Doc. 25. Defendants filed their motion to dismiss or, in the alternative, for summary judgment on August 28, 2018. Doc. 21. The Court therefore denies Plaintiff's motion for default and motion for contempt.

[10] The Court recognizes that Defendants challenge administrative exhaustion of Plaintiff's Eighth Amendment claim and categorize this challenge as a Rule 12(b)(1) issue. Ordinarily, a court must first resolve any challenges to subject matter jurisdiction before analyzing other dispositive issues. But the Tenth Circuit stated that "the PLRA exhaustion requirement, although mandatory, is not a prerequisite to our jurisdiction." *Hoover v. West*, 93 F. App'x 177, 180 (10th Cir. 2004). Because the Court questions whether administrative exhaustion truly raises a Rule 12(b)(1) subject matter jurisdiction issue (as compared to a Rule 12(b)(6) failure to state a claim) and because qualified immunity resolves the entire case, the Court initially considers Defendants' arguments on qualified immunity.

1992)). Therefore, the Court considers Defendants' alternative motion for summary judgment. *See Snavely v. Kan. Dep't of Corr.*, 2011 WL 1230514, at *3 (D. Kan. 2011) ("Because the court has considered the Martinez report in evaluating defendants' claims, the court resolves the motion under the defendants' request for summary judgment."); *Jones v. Roberts*, 2013 WL 1308272, at *1 (D. Kan. 2013) ("The court has considered documents and affidavits attached to the Martinez Report . . . Consequently, this motion is resolved as one for summary judgment.").

   A. **Summary Judgment Standard**

Summary judgment is appropriate if "the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establishes there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting prior version of Rule 56). The moving party bears the initial burden to establish the absence of a genuine issue of fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmovant "may not rely merely on . . . its own pleadings." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (internal quotations and citations omitted). "Rather, it must come forward with facts supported by competent evidence." *Id.* The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In applying this standard, courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.

## B. Eighth Amendment Claim

Count I of Plaintiff's complaint asserts a claim pursuant to § 1983 against Orunsolu based on an Eighth Amendment violation for excessive force. Doc. 1 at 4. Plaintiff alleges Orunsolu violated his rights by spraying him with mace—causing him to fall off his bunk and injure his lower back—and then falsifying a disciplinary report about the incident. *Id.* at 4, 7-8. Federal law recognizes a private cause of action against any person who, under color of state law, "subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Orunsolu moves for summary judgment on Plaintiff's Eighth Amendment claim in part under the doctrine of qualified immunity. Doc. 22. Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 23 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once an official has raised a defense of qualified immunity, the plaintiff bears the burden to show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Under the second prong, a right is "clearly established" for purposes of the qualified-immunity analysis where it is sufficiently clear that every reasonable official would have understood that his conduct violated that right. *Mullenix*, 136 S. Ct. at 308. To satisfy this step, courts do not require a case "directly on point," but the plaintiff must identify existing precedent—either controlling authority or "a robust 'consensus of cases of persuasive authority'"—placing the

constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741-42. To do that, the precedent "must be 'particularized' to the facts of the case" before the court. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (noting that courts should not define "clearly established law" at "a high level of generality"). If a plaintiff fails to satisfy either prong, the court must grant the defendant qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Plaintiff has not met his burden under either prong of the qualified-immunity analysis and, as such, Orunsolu is entitled to summary judgment on the basis of qualified immunity.

1. **Constitutional Violation**

An Eighth Amendment excessive force claim "involves two prongs: (1) an objective prong that asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). An official acts with a culpable state of mind where he uses force "maliciously and sadistically for the very purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotations omitted).

In analyzing an Eighth Amendment excessive force claim, in addition to considering whether the force was applied in good faith, courts evaluate factors such as: (1) the need for the application of force, (2) the relationship between the need and the amount of force used, and (3) the extent of injury inflicted. *Sampley v. Ruettgers*, 704 F.2d 491, 495-96 (10th Cir. 1983). "A court should also bear in mind that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself." *Id.* at 496. Courts recognize that, when faced with a disruption, "corrections

constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741-42. To do that, the precedent "must be 'particularized' to the facts of the case" before the court. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (noting that courts should not define "clearly established law" at "a high level of generality"). If a plaintiff fails to satisfy either prong, the court must grant the defendant qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Plaintiff has not met his burden under either prong of the qualified-immunity analysis and, as such, Orunsolu is entitled to summary judgment on the basis of qualified immunity.

1. **Constitutional Violation**

An Eighth Amendment excessive force claim "involves two prongs: (1) an objective prong that asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). An official acts with a culpable state of mind where he uses force "maliciously and sadistically for the very purpose of causing harm" and not "in a good faith effort to maintain or restore discipline." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotations omitted).

In analyzing an Eighth Amendment excessive force claim, in addition to considering whether the force was applied in good faith, courts evaluate factors such as: (1) the need for the application of force, (2) the relationship between the need and the amount of force used, and (3) the extent of injury inflicted. *Sampley v. Ruettgers*, 704 F.2d 491, 495-96 (10th Cir. 1983). "A court should also bear in mind that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself." *Id.* at 496. Courts recognize that, when faced with a disruption, "corrections

officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Hudson*, 503 U.S. at 6. Prison officials should therefore be given "wide-ranging deference" in adopting and executing policies and practices needed to preserve internal order, discipline, and security. *Whitley*, 475 U.S. at 321-22. The Tenth Circuit has held that secondhand exposure to chemical agents—such as mace—is insufficient to establish an Eighth Amendment excessive force claim.[11] *See Redmond v. Crowther*, 882 F.3d 927, 937 (10th Cir. 2018) (holding prisoners' indirect exposure to gas was not an excessive use of force in violation of the Eighth Amendment); *Gargan v. Gabriel*, 50 F. App'x 920, 924 (10th Cir. 2002). Here, the evidence does not support a finding of excessive force.

Under the first factor—i.e., the need for force—the evidence indicates that Orunsolu was justified in deploying the mace. Both Orunsolu and Higbee have testified that, while distributing meals to inmates in Plaintiff's housing unit, Fine (Plaintiff's cellmate) reached through the cell's food pass, grabbing Orunsolu. Doc. 16 at 1, 3. Orunsolu subsequently deployed a two to three second burst of mace into the cell. *Id.* at 1, 3-4. Courts have found similar conduct by inmates to pose a security threat justifying an officer's use of force to restore order. *See, e.g.*, *Outlaw v. Newkirk*, 259 F.3d 833, 838-39 (7th Cir. 2001) (holding that grabbing a guard through a cell door is a security threat presenting a hazard to both guards and other inmates).

As set forth in Part I.A, above, Plaintiff never saw Fine grab or otherwise touch Orunsolu during their interaction at the food pass. Plaintiff claims he was eating his lunch on the top bunk when he suddenly heard Fine cry out in pain. Doc. 34 at 3. Fine's shouts caused Plaintiff to "look up," at which point Orunsolu sprayed mace through the food pass. *Id.* Accepting Plaintiff's version

---

[11] Under Plaintiff's own theory, he was not standing at the door when the mace was deployed and his exposure was, therefore, "secondhand" or "indirect."

of events as true, therefore, Plaintiff admits he was not looking at the door at the moment Fine was sprayed with the mace. It was only when he heard Fine cry out that he looked up to see what was happening. Under Plaintiff's own version of events, it would have been impossible for Plaintiff to see whether Fine grabbed Orunsolu.[12] In the absence of any credible evidence to the contrary, the Court therefore accepts Orunsolu and Higbee's testimony that Fine grabbed Orunsolu through the food pass, and, under these circumstances, Orunsolu's use of force was justified.[13]

Under the second factor, there is no evidence that the amount of force used was disproportionate to the need. Orunsolu and Higbee testified that, in response to Fine's attempt to grab him, Orunsolu deployed a two to three second burst of mace into Plaintiff's cell, striking Fine in his midsection. Doc. 16 at 1, 3-4. Prior to deploying the mace, Orunsolu verbally instructed Fine to stop. *Id.* at 1, 3. It was only after Fine ignored Orunsolu's orders that Orunsolu resorted to the use of force. *Id.* at 1, 3-4. And, as detailed below, Plaintiff did not suffer any injuries from the use of force that would tend to indicate that the force used was excessive or disproportionate.

Under the third factor, any injury sustained by Plaintiff was minimal. Although Plaintiff claims he fell from his bunk and injured his lower back, he offers no evidence on summary judgment to support this claim or to dispute Orunsolu's evidence that he was not in fact injured.[14] The report generated in connection with the July 2, 2017 use of force does not indicate Plaintiff sustained any injuries. Doc. 10-3 at 2. Likewise, both Orunsolu and Higbee testified that Plaintiff

---

[12] To the extent Plaintiff has provided alternative versions of what occurred, summary judgment cannot be avoided by relying on contradictory and self-serving declarations. *See Hall*, 935 F.2d at 1111 (although "[m]aterial factual disputes cannot be resolved at summary judgment based on conflicting affidavits . . . [t]o come within the protection of this rule . . . the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; <u>conclusory and self-serving affidavits are not sufficient</u>" (emphasis added)).

[13] Indeed, following the July 2, 2017 use of force, although the charges against Plaintiff were dismissed, Fine was ultimately found guilty of battery for grabbing Orunsolu through the food pass. Doc. 10-2 at 13-20.

[14] A self-serving declaration, unsupported by other record evidence, is insufficient to establish that Plaintiff suffered a back injury, let alone one severe enough to support an excessive use of force claim. *See supra* note 12.

11

did not complain of any injury or appear to be in distress. Doc. 16 at 2, 4. Plaintiff first reported the alleged injury on July 20, 2017. Doc. 14-2 at 14. Before this point—and, significantly, <u>after</u> the July 2, 2017 incident—Plaintiff reported at least two other health issues, yet made no mention of lower back pain in those complaints. Doc. 14-1 at 157-58; Doc. 14-2 at 15. When a medical appointment was scheduled in response to his July 20, 2017 request, Plaintiff refused to go to the appointment when called. Doc. 14-2 at 14. Plaintiff did not make any further medical requests related to his alleged back pain until September 7, 2017 (over two months after the use of force). *Id.* at 11. Between his July 20, 2017 and September 7, 2017 requests, Plaintiff made at least two additional health services requests, neither of which referenced lower back pain. *Id.* at 12-13. Medical records from exams conducted on September 8, 2017 and October 2, 2017 do not indicate any significant back problems. Doc. 14-1 at 82-84, 101-04. For all of these reasons, Plaintiff has not met his burden of showing Orunsolu violated the Eighth Amendment and, therefore, Orunsolu is entitled to qualified immunity.

### 2. Clearly Established

Even if Plaintiff had established a constitutional violation, Orunsolu would still be entitled to qualified immunity because Plaintiff fails to meet his burden of showing a violation of clearly established law. In his opposition to the motion for summary judgment, Plaintiff does not cite any case law relevant to his Eighth Amendment excessive force claim. Doc. 34. With his complaint, Plaintiff includes a reference to general Supreme Court precedent stating that a correctional officer's "use of force violates the Eighth Amendment when it is <u>not</u> applied 'in a good faith effort to maintain or restore discipline' but instead is used to 'maliciously and sadistically cause harm'"—but this precedent is not particularized to the facts of this case. Doc. 1-1 at 2 (quoting *Hudson*, 503 U.S. at 6-7). At no point has Plaintiff identified any authority—let alone a controlling

opinion or a "robust consensus" of persuasive authority—holding that the Eighth Amendment is violated by the <u>specific facts</u> presented here.

To the contrary, in a recent decision involving an Eighth Amendment claim related to secondhand exposure to chemical agents, the Tenth Circuit—in holding prison officials were entitled to qualified immunity—noted that "the most factually similar cases from our circuit" do not "clearly establish that inadvertent exposure to gas violates the Eighth Amendment." *See Redmond*, 882 F.3d at 939 (holding that plaintiff "cannot establish that the officers violated the Eighth Amendment and, even assuming they did, the right would not be clearly established"). The onus is on Plaintiff to identify existing precedent placing the constitutional question beyond debate. Because Plaintiff has not and cannot satisfy this burden, qualified immunity shields Orunsolu from liability.

### C. Fourteenth Amendment Claim

Count II of the complaint—also brought pursuant to § 1983—is based on an alleged violation of Plaintiff's Fourteenth Amendment due process rights. Doc. 1 at 4. Bos, Smith, Schnurr, and Norwood—like Orunsolu—argue they are qualifiedly immune from liability for Plaintiff's claim. Doc. 22. For the reasons set forth below, the Court agrees.

#### 1. Constitutional Violation

Plaintiff bases his Fourteenth Amendment claim on the alleged reliance on Orunsolu's purportedly falsified incident report to justify Plaintiff's continued placement in segregation following the July 2, 2017 use of force. In connection with the incident, Plaintiff was charged with a disciplinary violation and placed into segregation. Doc. 1-2 at 1-2; Doc. 10 ¶ 12. Smith and Bos approved the placement. Doc. 1-2 at 2. Although, after a hearing, the charge against Plaintiff was dismissed for lack of evidence, Plaintiff remained in segregation. Plaintiff filed grievances with

various departments and officials regarding his continued segregation, but was not moved. *Id.* at 7, 9, 14-15, 21-22, 24-25. Plaintiff claims Bos and Smith "used [their] position[s] to keep [him] in segregation after the initial reason for placement became moot." Doc. 1 at 2-3. Plaintiff sues Schnurr and Norwood under a respondeat superior theory. *Id.* at 3.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. However, the requirements of due process "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property" and "the range of interests protected by procedural due process <u>is not infinite</u>." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972) (emphasis added). Although "prisoners do not shed all constitutional rights at the prison gate . . . '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). This court has held that "[a]n inmate has no constitutional entitlement to a particular custody classification, and unless the action is arbitrary and capricious, the decision of prison authorities will be upheld." *Sterling v. Edwards*, 881 F. Supp. 488, 490 (D. Kan. 1995) (citing *Marchesani v. McCune*, 531 F.2d 459 (10th Cir. 1976)).

First, Plaintiff has not provided any evidence tending to show that Bos, Smith, Schnurr, or Norwood personally participated in the alleged deprivation of his Fourteenth Amendment rights. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). The evidence shows Bos and Smith's approval of Plaintiff's initial placement in segregation following the July 2, 2017 use of force by Orunsolu occurred <u>prior</u> to the hearing on (and subsequent dismissal

of) Plaintiff's battery charge. Doc. 1-2 at 2. Bos and Smith had no reason to doubt the veracity of Orunsolu's statements in his incident report when they approved Plaintiff's placement.

With respect to Schnurr and Norwood, the Court further notes that "[s]upervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Thus, "supervisory liability 'must be based upon active unconstitutional behavior' and 'more than a mere right to control employees.'" *Id.* at 1153 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). "[A] deliberate, intentional act by the supervisor to violate constitutional rights" is required—"the denial of . . . grievances alone is insufficient." *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996); *Grissom v. Werholtz*, 524 F. App'x 467, 475 (10th Cir. 2013). Plaintiff fails to allege—and has produced no evidence tending to show—that Schnurr and Norwood deliberately violated his constitutional rights or otherwise actively participated in the alleged deprivation.

Second, all of the evidence regarding Plaintiff's criminal and institutional history supports the decision to keep Plaintiff in segregation even after the charges related to the use of force were dismissed. Records of Plaintiff's incarceration reflect a lengthy disciplinary history—including threatening behavior to staff—and, indeed, materials attached to Plaintiff's complaint indicate he remained in segregation due to misconduct and behavioral concerns. Doc. 1-2 at 13 (recommending that Plaintiff be sent "to HCF for long term restricted housing placement" based on behavior, disciplinary history, and safety concerns); Doc. 10-1 (reciting Plaintiff's criminal and disciplinary history). The decision to keep Plaintiff in segregation was not "arbitrary and capricious." Plaintiff has not established that Bos, Smith, Schnurr, and Norwood violated the Fourteenth Amendment.

### 2. Clearly Established

As set forth above, Plaintiff has not established a constitutional violation sufficient to sustain his due process claim. Bos, Smith, Schnurr, and Norwood are entitled to qualified immunity on that basis alone. However, as with his claim against Orunsolu, even assuming a constitutional violation had occurred, Plaintiff has not shown a violation of clearly established law. None of the cases cited in Plaintiff's opposition support his contention that the Fourteenth Amendment was violated by the particular facts presented here.[15] Summary judgment is warranted on the basis of qualified immunity. *See al-Kidd*, 563 U.S. at 741-42 (holding that a plaintiff must identify existing precedent placing the constitutional question "beyond debate").

## III. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' motion to dismiss the complaint, or, in the alternative, for summary judgment (Doc. 21) is GRANTED.

THE COURT FURTHER ORDERS that Plaintiff's motion for default judgment and motion for contempt of court (Doc. 26) is DENIED.

IT IS SO ORDERED.

Dated: December 20, 2018            /s/ *Holly L. Teeter*
                                    HOLLY L. TEETER
                                    UNITED STATES DISTRICT JUDGE

---

[15] In his opposition, Plaintiff ostensibly provides the following cases in support of his Fourteenth Amendment claim: *Napue v. Illinois*, 360 U.S. 264 (1959); *Dow v. Virga*, 729 F.3d 1041 (9th Cir. 2013); and *Phillips v. Ornoski*, 673 F.3d 1168 (9th Cir. 2012). Doc. 34 at 11-12. Each of these cases addresses the <u>knowing</u> use of false testimony to obtain a criminal conviction. Not only are the facts of the cited cases inapposite to the circumstances presented here, Plaintiff has not provided any evidence tending to show that Bos, Smith, Schnurr, or Norwood knew about the alleged inconsistencies in Orunsolu's statements.